IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2016

## JEFFREY KING v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-73101, F-63586D       Royce Taylor, Judge**

### No. M2016-01646-CCA-R3-PC

The Petitioner, Jeffrey King, pleaded guilty to multiple drug and money laundering crimes, and the trial court sentenced him to forty years of incarceration to be served at 100%. The Petitioner attempted to reserve certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) about whether wiretaps used in the investigation of the crime were lawful. This court determined that the Petitioner was not entitled to relief on the basis of the certified questions and affirmed the judgments on appeal. *State v. King*, 437 S.W.3d 856, 889 (Tenn. Crim. App. 2013). In 2015, the Petitioner filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel and, after a hearing, the post-conviction court denied relief. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Jeffrey King.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John C. Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts and Procedural History

The facts underlying this case encompass numerous charges against the Petitioner and his co-defendants for possession and sale of marijuana, money laundering, and

possession of firearms in Davidson, Sumner, and Rutherford counties.[1] The Petitioner was represented by different attorneys in each county and pleaded guilty to varying drug and money laundering offenses in each county.

## A. Trial

This court summarized the factual and procedural background of the case for each of the three counties. We include that which is relevant to this appeal:

> On October 7, 2008, Phillip L. Taylor, state investigator for the 20th Judicial District Drug Task Force of Nashville, Davidson County, Tennessee, filed in the Criminal Court for Davidson County, Tennessee, an Application for Interception of Wire and Electronic Communications for the interception of communications through telephone line (615) 517-7591 "used by Bruce Dady" ("the First Dady Application" and "the First Dady Number"). The First Dady Application is 59 pages long and consists of 271 numbered paragraphs containing the sworn averments of Officer Taylor. The identified "concern" of the First Dady Application was "the delivery, sale, or possession with intent to sell or deliver, 700 pounds or more of any substance containing marijuana, and conspiracy to commit the same" ("the Target Crimes"). The First Dady Application identified the following individuals as participants in the Target Crimes: Vernon E. Lockhart, Bruce A. Dady, the [Petitioner and his co-defendants], . . . (collectively, "the Target Subjects"). . . . .

> Also on October 7, 2008, Officer Taylor filed in the Criminal Court for Davidson County, Tennessee, an Application for Interception of Wire and Electronic Communications for the interception of communications through telephone line (615) 714-5541 "subscribed to by Cassie T. Roark" but "believed to be used primarily by [the Petitioner]" ("the King Application"). The King Application is 60 pages long, consists of 275 numbered paragraphs, and is substantially similar to the First Dady Application.

> . . . .

> On October 7, 2008, the Criminal Court for Davidson County, the Hon. Mark Fishburn ("the Issuing Court"), granted the First Dady Application, the King Application. . . and issued as to each Application an

---

[1] Additional charges in Wilson and Cheatham Counties were dismissed.

Order Authorizing the Interception of Wire and Electronic Communications, a ten-page document. Each Order contains the following findings:

4. There is probable cause to believe that [the Target Subjects] have committed, and will continue to commit, the offenses of delivery, sale, or possession with intent to sell or deliver, 700 pounds or more of any substance containing marijuana, and conspiracy to commit same.

. . . .

5. There is probable cause to believe that the telephone assigned phone number (615) 714-5541, a telephone service provided by Verizon Wireless, . . . subscribed to by Cassie T. Roark at 1636 Stokley Lane, Old Hickory, Tennessee, believed to be used by [the Petitioner], Target Subject, in connection with the commission of the above described offense [sic].

. . . .

6. There is probable cause to believe that the communications to be intercepted will concern the telephone numbers associated with the Target Subjects, and the dates, times, and places for commission of the aforementioned offense when the Target Subjects communicate with their coconspirators, associates and other participants in the conspiracy, thereby identifying the co-conspirators and others as yet unknown. In addition, these communications are expected to constitute admissible evidence of the above described offense.

7. It has been established adequately that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ.

. . .

Applications for additional wiretaps and for extensions of the wiretaps previously authorized ensued over the period from October 10,

3

2008 through late March 2009. The Issuing Court granted all of the State's applications, resulting in the electronic surveillance of a total of twenty-three telephones. The involved phone numbers were monitored for several months for evidence related to the Target Crimes.

In 2009, the [Petitioner and his co-defendants] were indicted in several Middle Tennessee counties on multiple charges including drug and money-laundering offenses. In the Sumner County and Davidson County cases, the [Petitioner and his co-defendants] each filed a motion to suppress the evidence gleaned from the wiretaps. [The Petitioner] also filed a motion to suppress the evidence gleaned from the wiretaps in the Rutherford County case. Each of the trial courts held an evidentiary hearing and subsequently issued orders denying the [Petitioner's and his co-defendants'] motions.

Thereafter, [the Petitioner] entered conditional guilty plea in Rutherford . . . county, as follows:

> Rutherford County: One count of conspiracy to sell over seventy pounds of marijuana, a Class B felony, with a sentence of twenty years in the Tennessee Department of Correction ("TDOC"), and one count of possession with intent to sell or deliver over seventy pounds of marijuana, a Class B felony, with a consecutive sentence of twenty years' incarceration.

> . . . .

In conjunction with [his] plea, the [Petitioner] reserved the following certified questions of law:

> In the trial court, the [Petitioner] moved to suppress the fruits of electronic surveillance on numerous grounds: (1) that the initial wiretap Applications lacked probable cause to justify interception in violation of T.C.A. §§ 40-6-304(c) and 40-6-305, specifically including the Applications' failure to demonstrate the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted; (2) that the initial Applications failed to demonstrate a constitutionally sufficient requisite necessity

4

for the use of electronic surveillance pursuant to T.C.A. § 40-6-304(a)(3) and 18 U.S.C. § 2518(1)(c); (3) that all subsequent wiretaps were the fruits of the prior illegal wiretap interceptions and therefore, were fruits of the poisonous tree; (4) that the notarized but unsigned affidavit requesting a second extension of the wiretap for telephone number (615) 584-6075 was statutorily deficient to support interception; (5) that, in addition to being a fruit of the prior illegal interceptions, the subsequent interception of telephone (615) 653-2294 lacked probable cause to justify interception in violation of T.C.A. §§ 40-6-304(c) and 40-6-305 because they [sic] failed to make a sufficient link between the phone and suspected criminal activity or the targets of the investigation; (6) that, in addition to being a fruit of the prior illegal interceptions, the subsequent interception of telephone (615) 818-2839 lacked probable cause to justify interception in violation of T.C.A. §§ 40-6-304(c) and 40-6-305 because they [sic] failed to make a sufficient link between the phone and suspected criminal activity or the targets of the investigation; (7) that the Applications for extensions of the wiretaps failed to articulate a statutorily sanctioned purpose justifying continuing interception; (8) that the issuing Court neglected its duty as a neutral and detached magistrate and acted as an impermissible rubber stamp for law enforcement; and, (9) that the Applications contain omissions and material misstatements that undercut any showing of requisite necessity for the wiretaps.

The [Petitioner] timely appealed from [his] convictions, and this Court ordered that the appeals from the judgments of conviction entered in the Rutherford County, Davidson County, and Sumner County prosecutions be consolidated.

*King*, 437 S.W.3d at 860-64 (footnotes omitted). On appeal, this court determined that the Petitioner was not entitled to relief on the basis of the certified questions of law. It concluded that several of the questions were not dispositive, limiting review to: whether the wiretap applications provided a substantial basis for probable cause in accordance with the standard recited at Tennessee Code Annotated section 40-6-304(c)(4);[2] whether

---

[2] In a footnote, this court clarified that

[a]lthough the first of the issues [in the] [Petitioner's] certified questions refers

the wiretap applications satisfied the requisite necessity requirement found at section 40-6-304(a)(3); if the wiretap applications contained errors that invalidated the applications' validity; and whether subsequent wiretaps, after the wiretap of the initial phone, were "illegal as fruits of the poisonous tree." *Id.* 870-86  This court declined to rule on the remaining questions, stating "[the Petitioner] fails to explain how, in light of the State's other evidence, [his] convictions must be reversed and [his] cases dismissed were we to determine that the Issuing Court erred in granting the Allegedly Invalid Applications." *Id.* at 888.  For this reason, this court deemed not dispositive the Petitioner's remaining certified questions of law.  *Id.* at 886-89.  Accordingly, the convictions in each county were affirmed. *Id.* at 889.

## B. Post-Conviction Proceedings

---

specifically only to "the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted," the [Petitioner clarifies] in [his] reply brief that the "heart" of [his] probable cause challenge is that "[t]he State never conducted consensually monitored and recorded calls to any of the target telephones to discuss any target offense or criminal conduct."  That is, the [Petitioner] contends that the State failed to satisfy the nexus requirement set forth in subsection (c)(4) of the Wiretap Statute, which requires probable cause to believe that the targeted telephone is "being used, or [is] about to be used, in connection with the commission of the offense."  Tenn. Code Ann. § 40-6-304(c)(4).  . . .  Therefore, we decline to address any potential contention that there was no "probable cause for belief that particular communications concerning [the] offense will be obtained through the interception."  Tenn. Code Ann. § 40-6-304(c)(2).

6

The Petitioner then filed a petition for post-conviction relief, *pro se*, in which he alleged that he had received the ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered.[3] He argued that counsel was ineffective for failing to address on appeal the legality of Tennessee Code Annotated section 40-6-304(c)(2). He further argued that he entered his guilty pleas under the impression that his nine certified questions would be addressed in turn by the appellate court, would be deemed dispositive because of the agreement of the parties, and that a determination in his favor on any of the questions would result in his convictions being reversed. The post-conviction court appointed an attorney and subsequently held a hearing, during which the Petitioner, by agreement of the parties, submitted a transcript of the Davidson County post-conviction proceedings as an exhibit in lieu of live testimony. The evidence, summarized in our opinion affirming the Davidson County post-conviction court's judgment, is repeated here: Counsel testified that she worked as a criminal defense attorney for fifteen years and had handled hundreds of drug cases throughout her career. She stated that she had dealt with eighty to one hundred cases that had wiretapping issues and that she had "actively litigated" forty to fifty wiretap cases. She testified that she was "very experienced" at the time she represented the Petitioner. Counsel recalled that the Petitioner was charged in multiple counties and that she represented him in Sumner County and assisted with his representation in the other counties (hereinafter "Sumner Counsel"). Sumner Counsel was the Petitioner's primary attorney, and she stated that the Sumner County case "took the lead" over the Rutherford County and Davidson County cases.

Sumner Counsel testified that she spent a "tremendous" amount of time with the Petitioner and had a very good working relationship with him. She was his "primary point of contact" for his cases, and the majority of the litigation happened in Sumner County where she represented him. Sumner Counsel spoke with the attorneys in the Petitioner's other cases, and they met jointly with the Petitioner on occasion. Sumner Counsel described the Petitioner as a "profoundly smart guy" who wanted to be involved in his case and participate in his defense. As such, Sumner Counsel had many discussions with him about the litigation strategy over the course of an estimated seventy-five meetings. Sumner Counsel arranged for the Petitioner to have access to a computer while incarcerated on which he reviewed his discovery file. She felt that the Petitioner "trusted [Sumner Counsel's] judgment," although she recalled that he had a somewhat strained relationship with another of his attorneys.

---

[3] The Petitioner filed similar petitions for post-conviction relief in Davidson County and Sumner County. The Petitioner appealed the post-conviction court's denial of his petition filed in Davidson County, and this court affirmed the post-conviction court's judgment. *See Jeffrey King v. State*, M2016-01224-CCA-R3-PC (Tenn. Crim. App., at Nashville, June 28, 2017).

Regarding the Petitioner's direct appeal, Sumner Counsel testified that all of the Petitioner's cases were consolidated and that she wrote the appellate brief and argued the case. About the plea negotiations with the State, Sumner Counsel recalled that the State made an initial offer that "may have been forty [years] at thirty percent" but that a certified question was not included in the deal. Lengthy negotiations followed because the State insisted that the Petitioner plead guilty in multiple counties, which Sumner Counsel felt was unnecessary and excessive. Sumner Counsel also recalled that the State made an offer in exchange for the Petitioner's cooperation as a witness, and the Petitioner did not want to cooperate.

Regarding the certified questions of law in relation to the wiretap issue, Sumner Counsel said that this was "incredibly important" to the Petitioner because he felt very strongly that the wiretaps were unlawful. The Petitioner understood, and the State agreed, that without the wiretap evidence, the State's case would essentially have to be dismissed. As a result, the wiretap issue was also "incredibly important to [Sumner Counsel] legally." She agreed that if the certified questions had not been a part of the plea deal, the Petitioner would not have accepted the deal. She stated that the "certified question[s] were the enticing factor for that plea deal for [the Petitioner]."

Turning back to her representation of the Petitioner, Sumner Counsel recalled that she reviewed with the Petitioner "every bit" of the discovery. Based on the State's evidence, she and the Petitioner "knew collectively that if we went to trial we were in trouble." "[The Petitioner's] perspective, he knew that if he went to trial he would be convicted." Sumner Counsel had prepared documentation of the Petitioner's maximum potential exposure if he was convicted by a jury, and it was ninety years or more with much of the sentence to be served at 100 percent because of school zone enhancements. Sumner Counsel stated:

> [I]t was very important to [the Petitioner] that the certified question[s] be heard. And my advice would have been to him, although I thought the [State's] offer was terrible and I thought it was way too much time in the case, . . . we didn't have a lot of choices, those were our choices. . . . . But with the certified question[s] I really felt strongly that he should consider the offer. It gave him what he wanted, gave him the opportunity to be heard on appeal on these issues, and it gave him some control of his future in the sense of a definitive resolution.

Sumner Counsel stated that she was not a "seller" of plea agreements and believed that a case should go to trial if a defendant so desired. She stated that she never pressured clients to give up their right to a trial. About the motion to suppress the wiretaps, Sumner Counsel felt strongly that the wiretaps were unlawful and that everything that flowed

from the wiretaps should be suppressed. Sumner Counsel recalled that she reviewed each wiretap and made an independent judgment on each one as to whether to file a motion to suppress.

Turning back to the certified questions of law, Sumner Counsel recalled that she was in discussion with the State for four to six weeks about the question. She was "very concerned about the trickiness of a certified question" because the appellate court was "notorious for finding ways not to hear certified questions," and she told the Petitioner that she had been "a victim" of that occurrence on more than one occasion. As such, Sumner Counsel "cautioned" the Petitioner about the "tricky process from a procedural perspective." The State agreed to the submission of a certified question of law, and the State allowed Sumner Counsel flexibility as to how to craft the question. The Petitioner and Sumner Counsel discussed the certified question and what issues to include. Sumner Counsel "knew" that some of the nine questions were not dispositive, while some of the others were. Sumner Counsel explained the risk to the Petitioner that the appellate court might find certain ones were not dispositive and would decide not to rule on them for this reason. She advised him that there was "an equal chance" that the appellate court would go ahead and rule on the questions even if they were not dispositive. She testified, however, that the main certified questions were dispositive, and if the appellate court ruled in the Petitioner's favor on those main questions, the case would "disappear" for the Petitioner.

Sumner Counsel acknowledged the complexities involved with a certified question of law and stated that, even though she thought the Petitioner was a very intelligent person, she knew that the procedural process for review of a certified question was difficult to understand. She took plenty of time to discuss the complexities with the Petitioner but could not say whether he was able to understand or absorb them. When asked if Sumner Counsel thought the Petitioner might have gotten a different impression than she had from their discussions, she replied, "It's possible."

About the first certified question, whether "the initial wiretap Applications lacked probable cause to justify interception in violation of T.C.A. §§ 40-6-304(c) and 40-6-305, specifically including the Applications' failure to demonstrate the statutorily required nexus between the phone to be intercepted and the alleged illegal activity sought to be intercepted[,]" Sumner Counsel agreed that the appellate court addressed this question but declined to rule on several of the requirements of subsection (c) of the statute based on what it deemed Sumner Counsel's narrowing of the issue to subsection (c)(4) in the reply brief. Sumner Counsel disagreed with this, saying that she had focused on one prong, (c)(4), in her reply brief because of the State's argument in its brief but had thoroughly briefed the issue on subsection (c). She stated that she had no regrets about the way she briefed the issue and that she had done so thoroughly but that the argument

9

was hurt by the appellate court's limited analysis. As to this argument, and every other aspect of the case, Sumner Counsel told the Petitioner that she could not guarantee the outcome at any stage. Sumner Counsel testified that the Petitioner was upset after the appellate court issued its opinion finding many of the questions were not dispositive and declining to rule on the merits of those it deemed not dispositive. The Petitioner was upset with Sumner Counsel for taking away his avenue of appeal.

On cross-examination, Sumner Counsel reiterated that the Petitioner was very active in his case and asked a lot of questions. Based on the Petitioner's questions, Sumner Counsel felt he had a good understanding of the case and his right to a jury trial. Sumner Counsel believed that the Petitioner understood he was giving up his right to a jury trial by deciding to plead guilty with certified questions reserved. She testified that he understood that if he proceeded to trial, his risk of conviction was great but that he would retain his right to appeal every issue. Sumner Counsel reiterated that she explained to the Petitioner the risk of dismissal on the "front end" of the certified questions because of a mistake in the "paperwork" but told him that she was confident that would not happen because she had successfully pursued certified questions recently and had done so successfully on the "paperwork" side of it. She did discuss the "other hazards" of a certified question, including the issue of "calling" something dispositive when it was not and how the appellate court would decline to rule in that situation. She discussed with the Petitioner the risk of putting his case in the "Court of Criminal Appeals hands" versus putting it in the hands of a jury and the difference between a ninety-plus-year sentence with an automatic right to appeal versus a shorter sentence with some risks on appeal because of the certified question. Sumner Counsel gave the Petitioner her best forecast as to how each scenario might play out; however, she stated that she could not have forecasted that the appellate court would conclude that she had narrowed the first issue in her brief and then decline to rule on it; this issue, she felt, was the "heart" of the case. The appellate briefs drafted by Sumner Counsel were admitted into the record as exhibits.

The Petitioner's Davidson County attorney (hereinafter "Davidson Counsel") testified that he represented the Petitioner on the Davidson County charges. He filed a motion to suppress the wiretap evidence by tailoring Sumner Counsel's motion to the facts in Davidson County. He also observed the suppression hearing held in Sumner County, argued by Sumner Counsel, where he "learned a lot" about a case such as this one involving large amounts of drugs over a long period of time. Davidson Counsel testified that he did not make any substantive changes to Sumner Counsel's motion; however, he did litigate the motion himself. Davidson Counsel recalled that he did not meet with the Petitioner independently from Sumner Counsel and stated that they met jointly with the Petitioner three or four times. The Petitioner "made it clear" to Davidson Counsel that the Petitioner thought Sumner Counsel was more knowledgeable and he was

more interested in her opinion on the law. Davidson Counsel willingly assumed the role of "second fiddle."

As for the certified questions reserved in the Petitioner's Davidson County plea, Davidson Counsel testified that Sumner Counsel offered to draft the certified questions, and he accepted her offer. Davidson Counsel recalled attending a meeting with the Petitioner and Sumner Counsel about a possible plea deal, and the Petitioner expressed that he was not happy with the State's offer. The Petitioner and Sumner Counsel discussed "the pros and cons" of proceeding to trial, and Davidson Counsel offered his opinion that, based on his prior dealings in Davidson County Criminal Court, this amount of drugs often resulted in the maximum sentence. Davidson Counsel recalled that he initiated discussions about a reduction of the plea offer sentence, but the State declined and expressed its desire for the Petitioner to turn down the State's offer and proceed to trial. Davidson Counsel agreed that the plea deal encompassing all three counties was a "package deal" from the outset and was never going to be anything other than a global settlement. Davidson Counsel agreed that he had nothing to do with the certified questions or the appellate issues.

Davidson Counsel agreed that the Petitioner was motivated to enter a guilty plea because of the certified questions and that Sumner Counsel felt strongly that if the appellate court addressed the certified questions, the Petitioner would be granted relief. The Petitioner was otherwise "reluctant" to enter a guilty plea. Davidson Counsel stated that Sumner Counsel was confident that the Petitioner would win on appeal but agreed that there were "prerequisites" to her confidence. He stated, "The qualifiers were there," pertaining to Sumner Counsel's predictions of success on appeal.

The Petitioner testified that Sumner Counsel's testimony regarding their relationship was accurate. The Petitioner retained her on the recommendation of another attorney that she was the premier wiretap lawyer in the State. The Petitioner agreed that Sumner Counsel was very knowledgeable, although his reading of some of the wiretap law differed from hers. The Petitioner stated that he was amenable to Sumner Counsel being the lead counsel for all the suppression hearings, meaning her legal work was used by his other attorneys in the other counties.

Regarding the certified questions, the Petitioner agreed that he had no knowledge of the law or procedure surrounding them and was reluctant to take the plea deal because he was giving up his right to appeal many issues that were not included in the certified questions. The Petitioner acknowledged that he was exposed to lengthy sentences in the three counties but that it was more important to him to have his issues heard on appeal. Sumner Counsel explained to him that certified questions of law are "particular" in the way they are drafted and that it can be difficult to prevail in an appellate court or even

11

have them considered. The Petitioner recalled that Sumner Counsel had modeled the certified questions for his case from certified questions she had successfully used in another case. The Petitioner understood that all of the certified questions would be heard and that they were each deemed dispositive by agreement of the Petitioner, the State, and the trial court. Sumner Counsel did not tell the Petitioner that all of the questions were dispositive, but the Petitioner did not know at the time that the appellate court would be making an independent conclusion about whether a question was dispositive before review on the merits. The Petitioner believed that the "barrier" was getting the State and the trial court to agree, not the appellate court. He was not aware that the appellate court could "divide" the questions and deem some dispositive and others not.

The Petitioner testified that he became more knowledgeable on the wiretap law and certified question procedure and that he did not agree with the way Sumner Counsel framed her argument about the wiretap statute in the appellate brief. The Petitioner testified that he did not feel that Davidson Counsel was prepared for the suppression hearing because he used Sumner Counsel's motion and did not do the research himself or prepare independently. The Petitioner acknowledged that Sumner Counsel's appellate argument employed federal law and that this was a case of first impression at the state level. Regarding the drafting of the certified questions, the Petitioner testified that he was present and had input but that the majority of them were drafted by Sumner Counsel.

On cross-examination, the Petitioner testified that he did not knowingly enter his guilty plea because he would have chosen to go to trial if he had known that the agreement of the parties was not sufficient to guarantee a finding that the questions were dispositive and would be considered. He agreed that at the guilty plea submission hearing, he was asked if he wished to waive his right to trial and that he affirmed that he did.

The Petitioner's Rutherford County attorney (hereinafter "Rutherford Counsel") testified that the Petitioner's charges in Rutherford county were not as serious as the other counties. He stated that most of his contact with the other attorneys was with Sumner Counsel and that the Petitioner wanted him to follow Sumner Counsel's lead with regard to the wiretap issues. His understanding was that all the defenses in the various counties were based on one theory that Sumner Counsel had researched and prepared. Rutherford Counsel recalled that in Rutherford County the Petitioner entered a plea to an A or B felony with a forty-year sentence to be served at 30 percent. He stated that the Petitioner was not happy about the plea or the sentence, but he agreed to enter the plea in order to have appellate review of his certified questions of law. Rutherford Counsel agreed that Sumner Counsel prepared the certified questions of law and that he made no substantive changes.

12

The post-conviction court subsequently issued an order, citing and adopting the Davidson County post-conviction court's order regarding the Petitioner's claims about Sumner Counsel's representation. The Davidson Order found the following:

1. Certified Question

[The] Petitioner's primary complaint is that he was denied the right of effective assistance of counsel because his trial and appellate counsel 'led [the] Petitioner to believe that each of the nine 'issues' enumerated in his guilty plea were being properly preserved for appeal and that each would be considered by [the appellate court] as nine distinct reasons for vacating his convictions and dismissing the indictments against him.' . . . [The] Petitioner . . . conceded that [Sumner Counsel's] testimony was accurate and that she thoroughly discussed his case with him. He explicitly testified that [Sumner Counsel] described the 'tricky' nature of certified questions and that 'she did not tell me [all issues raised in the certified question] were dispositive.' [The] Petitioner testified that it was his 'recollection' that since the State and trial court agreed to allow the certified question that all the issues would be heard.

[The] Petitioner further testified that the only way he would consider entering a plea is if the State agreed to a certified question for appeal; however, [the] Petitioner's complaint is that (1) he 'gave up a lot of issues that were not in the certified question that [Sumner Counsel] said not dispositive of case' [sic] and (2) the Court of Criminal Appeals used its judicial discretion and only addressed issues within the certified question deemed dispositive and cognizable for review. Accordingly, [the] Petitioner has failed to demonstrate by clear and convincing evidence that [Sumner Counsel] or [Davidson Counsel] were ineffective or that he was prejudiced by any alleged deficiency.

Moreover, [Sumner Counsel] and [Davidson Counsel] testified that [the] Petitioner was not guaranteed success on appeal and was advised that not all of the issues raised on appeal were dispositive in nature. [The] Petitioner agreed to the accuracy of [Sumner Counsel's] testimony at the evidentiary hearing and this Court credits the testimony of [Sumner Counsel].

. . .

This Court credits the testimony of [Davidson Counsel] and [Sumner

13

Counsel].  The substantial appellate briefing demonstrates that [Sumner Counsel] argued all of the issues raised in the certified question.  It is the appellate court's prerogative to determine which of those issues are dispositive and subject to ruling.  For all these reasons, this Court finds that [the] Petitioner has failed to establish his burden for post-conviction relief as to this issue and the petition is denied on this ground.

. . .

3. Arguments Regarding the Legality of T.C.A. § 40-6-304(c)(2)

Post-Conviction Counsel . . . argued that [Sumner Counsel] was ineffective because the manner she responded to the State [in appellate briefing] waived the issue [of the legality of T.C.A. § 40-6-304(c)(2)].  This Court disagrees.

First, [Sumner Counsel] testified that she briefed all of the issues raised in the certified question, which is supported by the comprehensive filing introduced as an exhibit to the post-conviction hearing.  [Sumner Counsel] explained that since the State focused its response brief on one particular issue, she elected to hone in on that issue in her reply brief; however, she did not waive any issues by devoting her allotted number of reply brief page [sic] to hone in on countering the State's arguments.  The Court credits [Sumner Counsel's] testimony and finds she made a reasonable strategic decision.  [The] Petitioner has not demonstrated by clear and convincing evidence that [Sumner Counsel] was ineffective.  The Court also notes that [the] Petitioner testified to the accuracy of [Sumner Counsel's] testimony.

Second, as the Court noted from the bench during the evidentiary hearing, this Court addressed the Petitioner's concerns in its June 20, 2011 Order, which is part of the appellate record.  Since the appellate order did not address this particular issue raised by [the] Petitioner in the certified question, the trial court order stands.  The trial court decision was not reversed [by the appellate court] and, therefore, remains the law of the case despite the fact that [the] Petitioner and [Sumner Counsel] disagree with this Court's interpretation of the Tennessee Wiretapping Act.  Accordingly, [the] Petitioner has not met his burden of establishing prejudice.  [The] Petitioner's request for post-conviction relief is denied as to this claim due to [the] Petitioner's failure to establish by clear and convincing evidence that [Sumner Counsel] was ineffective and/or that he was prejudiced by the alleged deficiency.

14

4. Knowing and Voluntary Plea

In this case, [the] Petitioner faced two options: (1) go to trial facing significant time and potential consecutive sentencing if convicted (which both [Sumner Counsel] and [Davidson Counsel] testified they discussed with [the] Petitioner would be the likely outcome since the trial court determined the wiretap evidence admissible) or (2) accept the State's offer. [The] Petitioner rejected the State's initial offer and accepted only once modified so he would not have to cooperate with the State and would be able to pursue an appeal on the trial court's ruling as to the admissibility of the [wiretap evidence]. Ultimately, [the] Petitioner chose to accept the offer that allowed certainty in sentencing while having the opportunity to pursue issues of first impression regarding wiretap surveillance on appeal.

Now that the appeal court affirmed the legality of the wiretaps and elected not to address all of the issues [the] Petitioner wished to pursue, specifically the non-dispositive issues, [the] Petitioner appears to be experiencing "buyer's remorse."

The typed guilty plea petition entered in this case is highly descriptive and contains handwritten notations by [the] Petitioner with his initials on each page. Additionally, the transcript of [the] Petitioner's guilty plea hearing speaks for itself and reflects a comprehensive colloquy. After the State read into the record of its proof against [the] Petitioner, [the] Petitioner, through counsel, placed modifications to the facts on the record before [the] Petitioner accepted as generally true the facts of the underlying charges against him.

. . .

Accordingly, a review of the record, including the guilty plea transcript, affirmatively demonstrates that the Petitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily, intelligently, and knowingly entered. . . . [The] Petitioner has not established his burden by clear and convincing evidence, and his petition for post-conviction relief is denied as to all claims raised.

The post-conviction court found that Rutherford Counsel had effectively represented the Petitioner and had agreed to follow Sumner Counsel's "lead to promote [the] Petitioner's chosen trial strategy." The post-conviction court denied the Petitioner's

15

petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner raises identical issues to those in his appeal of the Davidson County post-conviction court's order, contending that the Rutherford County post-conviction court erred when it denied his petition because he received ineffective assistance of counsel. It is because of the ineffective assistance of counsel that he claims his plea was not knowingly and voluntarily entered. He further claims that the post-conviction court should have found that Sumner Counsel was ineffective in her advice and preparation regarding the certified questions of law and that she was ineffective by waiving the Petitioner's argument on direct appeal with regards to Tennessee Code Annotated section 40-6-304(c)(2). The State responds that the Petitioner knowingly and voluntarily entered his plea and that Sumner Counsel prepared proper certified questions of law with dispositive issues to reserve on appeal and properly advised the Petitioner as to the nature of certified questions of law. The State further responds that Sumner Counsel did not waive the Petitioner's argument regarding Tennessee Code Annotated section 40-6-304(c)(2) on appeal.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

17

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). The definition of "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Grindstaff v. State*, 297 S.W.3d 208, 216-17 (Tenn. 2009).

## A. Knowing and Voluntary Plea

The Petitioner claims that his plea was unknowingly and involuntarily entered because he received the ineffective assistance of counsel. He stated that after the trial court ruled on his motion to suppress, "instead of going to trial, [Sumner Counsel] negotiated a plea agreement, where the cases in all three counties would be resolved for a sentence of 40 years." He claims that because Sumner Counsel was lead counsel in the cases throughout the various counties, her actions and decisions should be attributed to the attorneys in those other counties. The State responds that the evidence presented shows that the Petitioner's plea was entered knowingly and voluntarily, and that without a transcript of the Petitioner's guilty plea, which the States notes is not included in the record, we are to presume the post-conviction's court findings correct. We agree with the State.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). A plea meets constitutional muster when the defendant understands both what the plea connotes and its consequences, *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citing *Boykin*, 395 U.S. at 244), and makes a voluntary and intelligent choice from the alternative courses of action available to plead guilty. *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400

U.S. 25 (1970)). A petitioner's testimony at a guilty plea hearing "constitute[s] a formidable barrier" in any subsequent collateral proceeding because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

When determining the knowing and voluntary nature of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. A reviewing court can look to a number of factors to find a "knowing and intelligent plea," including "[t]he relative intelligence of the petitioner, the degree of his familiarity with criminal proceedings, the opportunity to confer with competent counsel and the trial court regarding the charges faced, and the desire to avoid a greater punishment resulting from a jury trial." *Blankenship*, 858 S.W.2d at 904. The petitioner must have an understanding of the charges against him and the consequences of pleading guilty, including "the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 905. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Id.* at 904.

The post-conviction court, in its order which adopted the Davidson Order, found that Petitioner had affirmed at the guilty plea hearing that he was making his own decision to plead guilty, as reflected in the "comprehensive colloquy" placed before the post-conviction court. The post-conviction court held that the record and plea transcript "affirmatively demonstrates that the Petitioner's guilty plea was made with an awareness of the consequences, and, as such, the guilty plea was voluntarily, intelligently, and knowingly entered."

The evidence presented at the post-conviction hearing was that it was the Petitioner's decision to enter a guilty plea and reserve a certified question of law. He was not "happy" about the plea, but he chose not to risk a trial where he faced possible lengthy sentences. Instead, he elected to accept the State's offer that greatly reduced his sentence while still retaining review of his certified questions of law. Sumner Counsel testified that the Petitioner was very engaged in the preparation of his case and in the decision whether to go to trial or plead guilty. Rutherford and Davidson Counsels affirmed that this was their impression of the discussions they observed. Sumner Counsel also stated that she did not like the State's offer and felt that the State was charging the Petitioner excessively. She further testified that she gave her clients the option to proceed to trial and did not shy away from trying a case. In this case, however, where the Petitioner faced a lengthy sentence approaching 100 years, Sumner Counsel encouraged him to enter a plea. Together, Sumner Counsel and the Petitioner weighed the risk of taking his case to trial, where he faced a lengthy sentence but retained all his rights of appeal, versus entering a guilty plea for a sentence of less than half the potential prison

19

time but reduced rights of appeal. The Petitioner affirmed that he was asked at the guilty plea hearing whether he understood his right to trial and that he was giving up that right, which he stated he did. Based on this evidence, we conclude that the Petitioner's plea was entered knowingly and voluntarily and that Counsel's representation of the Petitioner with regard to his decision was effective. Thus, he is not entitled to relief.

## B. Certified Questions of Law

The Petitioner next claims that Sumner Counsel was ineffective in her preparation of the certified questions of law and in her educating the Petitioner on the applicable law. The Petitioner claims that Sumner Counsel admitted that she knew that several of the certified questions were not dispositive but that she also knew that the Petitioner was only accepting the plea offer because he wanted his issues heard on appeal. He contends that Sumner Counsel "crafted [] certified question[s] that she knew to be ineffective in assisting [the Petitioner] to allow that to happen." The State responds that the evidence does not preponderate against the post-conviction court's findings that Sumner Counsel did not guarantee the Petitioner success on appeal and informed the Petitioner in advance that his success on appeal depended on the appellate court's interpretations of the law. We agree with the State.

The post-conviction court found that the Petitioner had agreed that Sumner Counsel had advised him of the procedural risks of the certified question and that she advised that she could not guarantee that his questions would be deemed dispositive by the appellate court. The post-conviction court found that Sumner Counsel in no way guaranteed him success on appeal and credited Sumner Counsel's testimony that she had adequately advised him of the risks related to the decision to proceed in this manner.

Our review of the evidence shows that the evidence does not preponderate against these findings and that Sumner Counsel was not ineffective in her representation of the Petitioner regarding the certified questions of law. Sumner Counsel advised the Petitioner that there was the possibility that his questions would not be deemed dispositive and that this meant there was a risk that his issues would not be heard. Sumner Counsel fully understood the importance of the certified questions to the Petitioner and spent multiple meetings discussing the option to take his case to trial or accept a lesser sentence with the certified questions reserved. Sumner Counsel's prior experience with certified questions on appeal allowed her to advise the Petitioner of the risks but also the possibility for success. Sumner Counsel was not ineffective in her representation of the Petitioner in this regard.

The Petitioner points us to several decisions promulgating the standards and limitations for certified questions of law to which he claims Sumner Counsel did not

20

adhere. *State v. Preston* stated that it was the appellate court's determination, not that of the trial court and the agreement of the parties, as to whether the certified question was dispositive. 759 S.W.2d 647 (Tenn. 1988). The Petitioner argues that Sumner Counsel was aware of this law, however, she failed to caution the Petitioner that the certified questions might not be heard. We disagree. The evidence shows that Sumner Counsel advised the Petitioner that, although not all questions would be deemed dispositive, she chose to include them anyway because it was her experience in the past that the appellate court would sometimes overlook whether a question was dispositive and choose to review it. This, however, was not "guaranteed" by Sumner Counsel, and the Petitioner testified that he was informed of that. The Petitioner is not entitled to relief on this issue.

### C. Appellate Argument

The Petitioner lastly contends that Sumner Counsel provided ineffective assistance of counsel on appeal when she "waived [the Petitioner's] primary argument on his direct appeal," that being his argument related to the probable cause requirement found at Tennessee Code Annotated section 40-6-304(c)(2). He contends that Sumner Counsel improperly narrowed his appellate argument to one prong of the statute, (c)(4), in her reply brief, causing the appellate court to waive consideration of what he contends was his strongest argument. The State responds that Sumner Counsel's decisions to "use her reply brief to hone in on the specific issue the State focused on in its response brief was a reasonable strategic decision." We agree with the State.

The post-conviction court adopted the following findings with respect to this argument:

First, [Sumner Counsel] testified that she briefed all of the issues raised in the certified question, which is supported by the comprehensive filing introduced as an exhibit to the post-conviction hearing. [Sumner Counsel] explained that since the State focused its response brief on one particular issue, she elected to hone in on that issue in her reply brief; however, she did not waive any issues by devoting her allotted number of reply brief page [sic] to hone in on countering the State's arguments. The Court credits [Sumner Counsel's] testimony and finds she made a reasonable strategic decision. [The] Petitioner has not demonstrated by clear and convincing evidence that [Sumner Counsel] was ineffective. The Court also notes that [the] Petitioner testified to the accuracy of [Sumner Counsel's] testimony.

The evidence does not preponderate against the trial court's findings. Sumner Counsel provided her original appellate brief and reply brief as exhibits at the hearing and

21

testified that she argued all prongs of the statute in her first brief and then, after the State responded, she addressed their particular argument in her reply brief. She stated that nothing that she did limited or waived her argument as to certain aspects of the statute and that she felt the appellate court had incorrectly determined that she had done so. We have reviewed the briefs from the direct appeal and have determined that the evidence does not preponderate against the post-conviction court's finding that Sumner Counsel fully briefed the Petitioner's argument related to the probable cause requirement found at Tennessee Code Annotated section 40-6-304(c). Sumner Counsel addressed the subsections of the statute in her brief that she felt most strongly aided her argument that the wiretaps were unlawful. While this Court's decision did limit the Petitioner's argument, we conclude that the Petitioner has not shown that Sumner Counsel was ineffective in this regard; she made a strategic decision to focus her argument in the reply brief that we will not second guess. The Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE